Good morning. Good morning. May it please the court, Teresa DeMonte on behalf of Appellant Dwayne Brooks. This case presents important questions of constitutional magnitude. My time is short, so subject to the court's questions, I plan to first address the constructive amendment of the indictment as to just count seven, then turn to confrontation and hearsay issues, and finally discuss sentencing. As to the constructive amendment on count seven, the rule is that when conduct necessary to satisfy an element of a crime is charged in the indictment, and the proof includes uncharged conduct, we need some way to assure the jury convicted solely on the conduct alleged in the indictment. We don't have that assurance here as to count seven. Count seven, the indictment alleged that Mr. Brooks knowingly and with intent to defraud affected transactions with unauthorized access devices to wit discover cards issued in the name of Dean Dobbs. The evidence at trial showed or was certainly sufficient to show those transactions with discover cards, but additionally, it showed other transactions with other cards, including American Express cards in excess of the jurisdictional amount. The instructions to the jury, so the evidence, altered the indictment. The government's closing argument altered the indictment by encouraging the jury to find guilt based on the American Express transactions, and the trial court's instructions to the jury completed that alteration by being generic and allowing a finding of guilt not directed towards the discover card. This case... Counsel, your argument would be more persuasive if there were no evidence presented regarding the discover cards, but because there was evidence presented regarding the discover cards, it appears that to me, your argument is a little bit weaker. Tell me a case that supports the proposition that an amendment to the indictment has occurred when there is evidence of the crime charged in the indictment. What case supports your theory that even if there is evidence of the charge behavior, that there's still constructive amendment? I didn't see one, so I'm asking, do you have one? Well, Your Honor, I'd like to give you three, if I can. Give me your strongest case. Howard v. Daggett. Howard v. Daggett from this court. Also, it's squarely governed by Howard v. Daggett, Dipentino, and Ward. In all three of those cases, the indictment alleged specific transactions that occurred, and then at trial, there was evidence, ample evidence to prove those transactions, but also evidence of additional transactions or actions. And then when given a generic jury instruction that was not geared towards the indictment, it was impossible to know whether the jury convicted based on charges that the looking to Howard v. Daggett, that's the case where he was charged with traveling in interstate commerce to induce two specific women into prostitution. The evidence at trial showed those two women, but also other women. This court held that an instruction that didn't limit the jury to those two women alleged in the indictment was error, reversible error. And same in Ward. Ward was a case involving, United States v. Ward, was a case involving identity theft. There, again, there were allegations in the indictment about identity theft with respect to some named individuals. And the evidence was sufficient to support a conviction based on those named individuals, but there was additional evidence of other people whom the defendant had committed identity theft against. And once again, this court held that that merited reversal. And finally, Dipentino. Dipentino's important because that's a plain error case. That's a case that involved a violation of the Clean Air Act. It was asbestos. The defendant was charged with having left wet asbestos on the floor for it to dry and not be scraped up timely and put in bags. But at trial, there was evidence sufficient to support that. But there was also evidence, also evidence, that the asbestos waste wasn't taken to a generator or waste facility quickly enough. And then the jury was just charged that if they found a violation of any work practice, they could convict. This court said that was error, and plain error. Counsel, Howard v. Daggett is a little bit different scenario because there are some specific technical requirements that have to be met for that particular crime. And so the issue becomes in terms of travel and what the purpose of was for the travel and why he took the women there. So it's a little more nuanced a presentation for conviction there than there is here. I'm not sure that that statute is similar enough to the statute in this case that we can say that there was a constructive amendment based on the analysis in that case. Well, Your Honor, I appreciate what you're saying. You're right. The statutes are very different. But the principle at issue is that when conduct that goes to an element of the crime is specified, that's what the grand jury passed upon. That's what the grand jury indicted on. And that's what you have a Fifth Amendment right to be tried on. But the Discover card is not an element of the crime. It's the use of the unauthorized access device, right? Correct. But the Discover transactions, the Discover transactions represented completely different transactions, completely different amounts. Those were all proved. Not completely different. They weren't complete. They weren't different in type. It was just a different card and a different amount. But it was not a different, it was not a different transaction. It was the same MO, the same crime, the same element, but just a different vehicle. Well, I'm going to get in trouble for mispronouncing it. It's cited in the government's brief. It's a TS. It's like Sina Hadjano. And that's a case where someone was indicted for engaging in sexual activity with a minor on a reservation over a period of time. The proof at trial was that it happened over some different times and on and off the reservation. Again, sort of the same conduct, but different from what was specified. But again, the crimes, the sexual assault crimes and the prostitution crimes, they are very, very technical. And every single element is geared toward the individual who is the victim. And to me, those crimes are a little bit different than the statute that you're talking about here. That's the difficulty I have with your argument, is I think that you're trying to apply a principle that goes with a very nuanced statute to a case where the statute isn't quite as nuanced. Well, Your Honor, I do think that conduct that goes to an element, whether it be a transaction that's happening, this is different from a case where there's one set of facts and, you know, with but one difference. These are two different sets of facts. There were transactions with a Discover card, totally different transactions with an American Express card. Different stores, different goods were purchased. Is it your view that the transactions... Get on the phone. I'm sorry. Judge Gould has a question. I do. I would appreciate it if counsel would address the issue of harmless error, because I'm wondering if the uncharged conduct evidence had not been presented. Is there any chance that Mr. Brooks could have been acquitted in this case? Well, Your Honor, there was evidence against Mr. Brooks. We know that. The government certainly put in all of the exhibits and the evidence and has discussed it extensively in his brief. I think when it gets to plain error review on a constructive amendment, the question isn't, would he have been acquitted? The question is, has it prejudiced his, harmed his substantial rights? You have a right to be found guilty only for a crime that a grand jury has passed upon. When the grand jury, I mean, you can't, it would, even if you'd be found guilty, that wouldn't allow a court, a trial court, for example, to direct a verdict for the government or direct a verdict for the state, even if a jury would have found you guilty. Here too, where someone, a finding of guilt could rest on a charge that wasn't passed before the grand jury, that seriously impacts the fairness and integrity of the proceeding, and it does affect your substantial right, your constitutional right. That's, that, that's what happened in Dipentino. For those reasons, I'd ask to reverse. Counsel, is it your argument that the transactions that were presented regarding the American Express card did not meet the elements of the crime charge? No, they, they would have met the elements of the crime charge. It would be sufficient to do that. That's, that's not the... I know, I understand. I just wanted to ask you, I just wanted to ask you that question. Yes. And in fact, the government urged the jury to make a finding of guilt based on those alone. Was there any objection to that? There was not an objection. That's why we're in plain error review. I see that I'm hitting my rebuttal time, so if there are no further questions. Thank you, counsel. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court, Michael Morgan for the United States. Unless the Court has questions about any of the other issues, since counsel limited their presentation to the Count 7 variance, I will do so as well, but obviously I will answer any other questions the Court has. With respect to Count 7, the government concedes that there was a variance. There's, there's no dispute that there was a technical variance in the case. The question is whether or not there was a constructive amendment. And I think Judge Gould hit the nail on the head here, which is that you don't really have to get there, because we're on plain error, and it's the defendant's financial rights were violated. And on this record, that's showing simply cannot be met. But if we do get there, was there a constructive amendment in the government's view? Was there a constructive? No. The answer to that is no, and I will explain why. The difference in the case between a constructive amendment and a variance, when the divergence in proof relates to the means for proving up an element, that's a variance. When the divergence in proof changes the substantive crime charged. The, the Indian Reservation case, the sexual assault case, is a perfect example, because it's a sexual assault, but an assault that occurs on day one is not the same crime as the assault that occurs on day two, even if they involve the same players. Those are different substantive crimes. So, if you prove, if you allege A and prove up B, that's a constructive amendment in that scenario. But that's not what happened here. This case involved a charge of access device fraud. The unit of prosecution for that fraud is a one-year period of unauthorized access device charges. Doesn't, doesn't turn on the victim, doesn't turn on the particular access device at issue. All that matters is that there is one or more access device used, and that over that one-year period, at least $1,000 in fraudulent transactions occur. How those transactions are proved, how you get to that $1,000, that's the means of proving the element. And if there's a divergence in proof about that means, under this Court's cases, that's a variance. Yes, ma'am. What's your response to opposing counsel's reliance on Howard v. Daggett? Daggett, I would read, is a similar case where you have different prostitution victims. So if you prostitute woman A, and the government comes in and proves up that you prostituted woman B, well, that's a different crime. That's a, there's a different victim there. But that's not what's going on here. What's going on here is that the, and it's also important to remember, as the Court has pointed out, the government, it's not that the government didn't prove what was alleged. The government proved that Mr. Brooks used Ms. Dobbs' Discover cards and proved it overwhelmingly. They just proved he also did some other frauds involving Ms. Dobbs' access devices. So this isn't a case where the defendant didn't have, was somehow blindsided by the proof that undermined his guilt. He was, he was proved to the, the factual elements that were alleged and specified and some other elements. And I should point out that under this Court's cases, when you have these two wit clauses that are specifying the factual means that you're going to prove an element, the Court's cases say that that two wit clause is surplusage. It's not an element of the offense. So it kind of doesn't matter whether the grand jury passed on that particular issue or not. The indictment would be sufficient if it didn't mention the Discover cards. You don't have to specify. The government did specify it, but that doesn't change the elements of the offense. And that's what a variance in a constructive amendment are focused on, the elements of the offense. Why, why was it specified? That I don't have a good answer for, because as, as the Court knows, the other access device count involved, the other victim didn't specify. It just said her credit and debit cards. I, I do not know why the, the assistant who decided to charge the case decided to charge it that way. But it's no different, this case is factually no different than a case where, imagine, you know, a felon in possession case where the defendant is found simultaneously in possession of ten firearms. The government alleges five of them. At trial, they prove ten, and you get a generic instruction. That, again, that, that's going to be a variance. That's not constructive amendment, because the exact crime is the same. It's just the proof that you're adding. And that's sort of like the Hartz case, this Court's Hartz case. It's, in that, it's, it's a similar scenario where the, the government alleged the guy possessed two firearms, and the jury's verdict made it clear that there was no agreement about which of the two. But the Court said that's fine, because that's just surplusage. It didn't matter that the Court specified which firearm. The, so therefore, it didn't, you know, the, the fact that the jury may have found one or the other was sort of irrelevant to whether or not that there was an amendment. It was just a variance. And again, that's all we have here, is we just have a divergence in proof about the factual elements, and that is at worst a variance. And it's, and again, given the nature of the proof, there's no way that this could be a harmful variance, even on, even on, you know, de novo review, let alone on plain error review. So here it was the same victim who had the Discover cards and the American Express? That is correct. The way that these charges were broken out, they were broken out by different one-year periods and different victims. So yes, it was the same victim on count seven. Would it have been a variance if the, if the proof of trial was about an American Express card held by a different victim? It would have been. It would have been a variance, because again, the nature of the charge, it, it doesn't depend on the victim. That's, that's the way this, the, the access device fraud statute works, is that it's, the unit of prosecution is the year. The government can prove up one or more access devices belonging to one or more different victims. It doesn't matter. It's just the aggregate of the access devices during that one-year period. That's why they were broken out this way. There's one year for year 1996 to 97 and one year from 97 to 98. I mean, is there not a risk of, here it was the same victim. If it's a different victim, is there not a greater risk of unfair surprise at trial? Well, I think that would depend on the facts of the case. In this particular case, there was no unfair surprise. The defense knew full well that the government was intending to prove this additional, these additional crimes. In fact, the defense moved to exclude them. So there were, in this particular case, there was no undue surprise. Could there be undue surprise if, for example, you know, the government's entire proof and discovery focused on one victim and then we got late discovery about another victim? Perhaps, but that wouldn't change whether or not it's a variance or a constructive amendment. I think that would simply go to whether or not the variance was harmful or not. Okay. Can you address the sentencing issue, the last issue? I can. And the short answer to the sentencing issue is that the guidelines credit that the defendant saw was unavailable under the plain text of 5G 1.3. 5G 1.3 applies only to undischarged terms of imprisonment. Any of the provisions that would arguably be applicable here, either subsection B or subsection D, they both apply only to undischarged terms of imprisonment. This Court has made clear that an undischarged term of imprisonment is exactly what it says, one that hasn't run. By the time the defendant was sentenced, his, these prior convictions had run. So he was entitled to no credit. In fact, the 15 months of credit he got, he was not entitled to. That was a mistake. So he's actually gotten a benefit. You know, there's an error to his benefit already in the record. So there's no need to compound that, that error by adding an additional credit because it's just unavailable under the guidelines. Now, it could, this Court obviously could have varied. That would have been a way to take into account of this. But that's, one, not the claim on appeal. They're not arguing that he, the Court should have varied. That would just be a substance of reasonableness claim, which is not the claim being presented. And they didn't ask for a variance on this basis below. They sought a guideline-based credit, and it was not available under the guideline. Irrespective of the fact that the reason the sentence had run was because of COVID? Yes. I mean, the text of the guideline is unambiguous. It's plain. To the extent the Court wanted to craft a remedy for that problem, the remedy was a variance. It was to say, okay, under the text of the guideline, this is unavailable because it's very clear when it's available, but I'm going to vary and reduce the sentence by the equivalent amount. In the exercise of discretion? In the exercise of discretion, exactly. Was that requested here? It was not requested. That was the problem. I mean, not a problem. The defense's claim was that this was available under 5G 1.3. That was the claim. It was a guidelines-based claim. It was not a request for just a freeze-floating variance. We don't even get into this if it's not relevant conduct in the first place, though. That's true. That's a second issue. And, in fact, it was litigated on the basis of relevant conduct. And that's what makes this actually even more complicated, because under the commentary, to be relevant conduct, the entire conviction has to be relevant conduct. And everyone concedes that the drug possession and DUI is not, under no theory, is relevant conduct. So there would be no credit under subsection B in any event. So now we're left with subsection D, which doesn't even give you a credit. That's just a free-floating, use your discretion to do what you think is best if it doesn't fit under subsection B. Yeah. This is almost turned around, because usually it's the government arguing that something is relevant conduct, and that has its own implications for other enhancements that can come into play. That's correct. Here it's the opposite. It is the opposite. And, you know, the defense actually prevailed on two of their three relevant conduct arguments. And I understand why, because under relevant conduct here, it actually winds up bumping down the criminal history category as well. So there's a reason for the defense to make this pitch. But you're correct that, like, regardless of whether or not it's undischarged, if it's not relevant conduct, that's yet another reason why this credit was unavailable. And your position is that because there were drugs as part of that offense, it's just not relevant conduct for that reason alone? No. Well, yes. Yes, under the commentary that the entire conviction has to be relevant conduct. But that's not the only reason. The government argued, and I agree, and I argue here, is that it's not relevant conduct because you have to look at what the crime was. It's not relevant conduct just because evidence relevant to this case was recovered. The two prior convictions that were deemed to be relevant conduct involved vehicle prowls where the defendant was, in fact, trying to gather identification from other individuals by theft. That's not what happened here. There's no proof that this possession of a stolen car was a means to acquire credit cards. It just happened to be that he was in a stolen car with stolen credit cards at the time. That doesn't make it relevant conduct to this scheme, unlike his other convictions where he was, in fact, prowling the cars to get credit cards, which was part of the scheme. Counsel, I'd like to ask you about the jury instructions on the intent element. Yes. Would you agree that the instruction was erroneous? Yes. Under this Court's decision post-Miller, the instruction is erroneous, and it's a plain error because it's clear at this time. It's just that it's a completely harmless error because the evidence of the defendant's fraudulent intent is just overwhelming on this record. So while it's a plain error, it doesn't meet Step 3 because of the overwhelming evidence of the defendant's criminal intent. Unless the Court has any other questions, I would ask that the judgment be affirmed. Thank you. It appears not. Thank you, Counsel. Rebuttal. Rebuttal. Judge Brass, you asked a really excellent question when you asked, you know, well, what if it had been a different victim? And Counsel's answer was, well, that would just be a variance. I'd like to take that a step further. What if it was a different card with a different victim on a shopping spree to L.A., going to fancy upscale stores, versus different cards, different victim, a trip to the countryside in England? And the indictment alleges one of them, and there's proof of both, and the jury is charged generically. Surely that is a different complex of facts amounting to a constructive indictment, a constructive amendment, excuse me, of the indictment. Because what matters, that's an extreme example, but the one we have here is enough, which is it's different behavior, different transactions. It's not just one fact. I direct the court to the Hartz case. That was different. Counsel cited that. There were two guns. That was a case where the indictment was narrowed at trial. It's always permissible to narrow an indictment. In fact, the government doesn't have to allege facts, you know, much specificity at all. None kind of, you know, it has the world open to it. There may be a bill of particulars. But here what we have is a broadening of the indictment, and that's never permissible. Not under Sterone, not under this court's decisions. Briefly, I'd like to address sentencing. Before the trial court, it was recognized that Mr. Brooks' state sentences had run by the time he was sentenced. He was originally set for sentencing in May of 2020, and we all know what happened there. His sentencing hearing was continued, not by his choice, for a year, and he wasn't sentenced until May 2021. But, counsel, does that matter if this was not relevant conduct? Here's why it matters, Your Honor. You're right that the guideline by its own terms doesn't apply because it doesn't have it. There's not an undischarged term of imprisonment. But what matters is the court didn't get there to consider the policy-based argument that trial counsel was making about COVID and about the delay and how, because. But that wouldn't matter if it's not relevant conduct. It wouldn't matter if it's discharged or undischarged if it were not relevant conduct. So that's the part I want you to address. How is this relevant conduct, the stolen car and the use of the devices? How is that relevant conduct? It's relevant conduct because the evidence at trial was that the indictment alleged, first of all, that he engaged in a scheme, and by various unlawful means, including but not limited to things like car prowling, the evidence at trial. Car prowling is different than auto theft. No doubt. But the evidence at trial was that, in fact, there's evidence in the suggestion that he, in fact, did steal a car. He stole Mr. Roterman's car and used that and took Ms. Susan Ash's identifying information out of that card, and that began the whole victimization against Ms. Ash in the government's conception of the case. And he took this car. And what do we know about it? We know that it was full to the brim with mail, so full that the state trooper could look in the back and see that it was overflowing with mail and could see that it was for many different individuals and identification documents, none of whom were Mr. Brooks. Mr. Gill, Sarah Gill's father, Sarah Gill's the mother of Mr. Brooks' children, testified that when Mr. Brooks was living with him, he would leave in the evening and return early in the morning with bags and bags. He gave those bags to law enforcement, who obtained a search warrant, and they were filled with mail. So this is part of the scheme, part of the conduct. What's our standard of review? Standard of review is for any findings of fact, it would be clear error. But here we don't have a finding of fact. We have a finding of fact, whether or not it's relevant conduct. Well, whether it's viewed for clear error as a finding or, you know, abuse of discretion, it meets that standard because as a matter of law, the conduct was at least partially relevant. Well, it has to be clearly erroneous, which means that there's only one way that the court could rule. If the court could rule either way, it can't be clearly erroneous. And so you're saying this evidence points to only one conclusion? On this record, yes. That's what I'm saying. All right. Thank you, counsel. Thank you, Your Honor. You've exceeded your time. Thank you to both counsel for your argument. The case just argued is submitted for decision by the court.
judges: GOULD, RAWLINSON, BRESS